UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN WILKEY,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>          Defendant. | No.  2:13-cv-02074 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Act. The parties' cross motions for summary judgment are pending. For the reasons discussed below, the court will grant in part plaintiff's motion for summary judgment, and will deny defendant's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed his application for DIB on August 31, 2010, alleging disability beginning on January 1, 2008. Administrative Record ("AR") 160–66. Plaintiff's application was denied initially on January 14, 2011, AR 88–92, and again upon reconsideration on March 10, 2011, AR 103–08. On May 8, 2012, a hearing was held before administrative law judge ("ALJ") Jean

Kerins. AR 25–51. Plaintiff appeared and was represented by attorney Bruce Hagel at the hearing. Id. Plaintiff and vocational expert Thomas Sartoris testified at the hearing. Id. In a decision dated July 20, 2012 the ALJ found plaintiff not disabled. AR 8–19.

The ALJ made the following findings (some citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since August 31, 2010, the application date.
>
> 2. The claimant has the following severe impairments: mixed receptive-expressive language disorder, reading disorder, right-inguinal and umbilical hernias, and chronic obstructive pulmonary disease (COPD).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except he must avoid concentrated exposure to extreme heat or cold and pulmonary irritants, and he is limited to unskilled work with jobs requiring reasoning level 1 under the Dictionary of Occupational Titles (DOT).
>
> 5. The claimant is unable to perform any past relevant work.
>
> 6. The claimant was born on August 23, 1959, and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.
>
> 7. The claimant has a limited education and is able to communicate in English.
>
> 8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since August 31, 2010, the date the application was filed.

AR 13–18.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied review on August 26, 2013, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1–5.

1 | FACTUAL BACKGROUND

2 | Born on August 23, 1959, plaintiff was 48 years old on the alleged onset date of disability
3 | and 52 years old at the time of the administrative hearing. AR 29, 160. Plaintiff did not engage
4 | in substantial gainful activity during the period between August 31, 2010 and July 20, 2012. AR
5 | 13. Plaintiff previously worked as a plumber's assistant for a friend who taught him how to
6 | perform the work, which included gluing pipes together and using tools such as a hammer and
7 | saw. AR 34–35. Plaintiff stopped working for his friend when he passed away and testified that
8 | he did not try to obtain work as a plumber's assistant after that because he cannot read or write.
9 | AR 35.

10 | Plaintiff's functional reports, dated October 20, 2010, were filled out by his daughter and
11 | indicate he cannot read. AR 192–99; AR 201–08. A medical examination dated December 4,
12 | 2010 indicates plaintiff completed the eleventh grade but can only read and write "very little."
13 | AR 293. A psychiatric evaluation dated December 5, 2010 indicates plaintiff can "do simple
14 | calculations like 8x4=32." AR 299. The evaluation also states plaintiff "can obey the three step
15 | command, but the spelling was poor[,] [and plaintiff] cannot spell the word world." Id. A
16 | psychiatric evaluation dated January 7, 2011 indicates plaintiff is unable to read and completed
17 | grade eleven and special education classes. AR 249. A separate evaluation dated January 7, 2011
18 | indicates plaintiff alleges he cannot read or write. AR 324.

19 | At the administrative hearing, plaintiff testified that he cannot read and write. AR 31.
20 | Plaintiff testified that he has a driver's license and obtained it by taking an oral test. Id. When
21 | grocery shopping, plaintiff testified that he shops for food by looking at a can and if there is no
22 | picture on it he just "bypass[es] it." AR 32. Plaintiff has food stamps to purchase items at the
23 | grocery store and the clerk tells him his balance, which is also printed on a receipt. Id. Plaintiff
24 | testified that he can read numbers and sign his name. AR 33. Plaintiff also testified that he
25 | started taking special education classes in "about the fifth grade" and was enrolled in special
26 | education between fifth and eleventh grade when he stopped attending school. AR 29, 35.

27 | During the administrative hearing, the vocational expert listed three positions a person
28 | could perform in response to the ALJ's hypothetical: a sorter I, a singer in the fabric industry and

3

a switch box assembler. AR 44. When questioned whether a person would be able to perform these positions if they could not read even simple instructions, the vocational expert testified that each of the positions would require the person to be able to read simple words. AR 45–46.

Plaintiff's counsel invited the ALJ to consider the evidence in the record as supporting a finding of plaintiff's illiteracy. AR 47. The ALJ expressed doubt regarding this factor and requested a Wide Range Achievement Test be administered to assess plaintiff's reading and writing abilities. AR 49.

On May 31, 2012, Dr. Ona Stiles, a clinical psychologist, administered five tests to plaintiff: Wechsler Adult Intelligence Scale – Fourth Edition ("WAIS-IV"), Wechsler Memory Scale – Fourth Edition ("WMS-IV"), Bender Visual Motor Gestalt Test – Second Edition ("Bender-Gestalt-II"), Trail Making Test ("TMT") and the Wide Range Achievement Test – Fourth Edition ("WRAT-4"). AR 407–16. On the WAIS–IV, plaintiff scored a 66 on verbal compression, a 94 on perceptual reasoning, an 86 on working memory and an 81 on processing speed. AR 410. In addition, plaintiff yielded a full scale IQ score of 77. Id. Plaintiff's results on the WRAT-4 indicate that plaintiff reads at the grade level of 1.7, functions at the K.8 grade level for sentence comprehension, spells at the K.6 grade level and performs math computation at the grade level of 3.7. AR 411. These results indicate that plaintiff's "achievement scores were significantly below his achieved grade level." AR 412. Dr. Stiles noted in the evaluation that plaintiff "reported having a learning disability and reported being placed in special education classes in 6th grade," and "had all Fs in school." AR 408. Dr. Stiles also noted that plaintiff "reported longstanding academic difficulties and could not fill out paperwork without assistance because he said he cannot read or spell well." AR 412.

Following the administration of the psychological tests, the ALJ issued its July 20, 2012 decision, which included a finding that plaintiff is not illiterate and has a limited education. AR 17. The ALJ based this finding on the following observations:

> The claimant testified he was in special education up through the 11th grade and can read the balance on his food stamp card, read numbers, and sign his name. The undersigned finds little reason to doubt the claimant would be able to meet the requirement for reading or writing a simple message. The record shows that the

> claimant is capable of reading simple words at a 1.7 grade level, sentence comprehension at a K.8 grade level, spelling at the K.6 grade level, and obeying a three-step command with poor spelling. despite significant difficulties in verbal comprehension due to a learning disability, these results show that he is capable of reading and writing simple words, enabling him to understand, remember, and carry out simple instructions . . . . He was able to perform his past relevant work, unskilled word at the SVP 2 level, suggesting adequate literacy to perform such work.

AR 17.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation,

1 | one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.
2 | Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons
3 | stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did
4 | not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340
5 | F.3d 871, 874 (9th Cir. 2003).

6 | The Court will not reverse the Commissioner's decision if it is based on harmless error,
7 | which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the
8 | ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.
9 | 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.
10 | Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS OF OPINION EVIDENCE

12 | Plaintiff seeks summary judgment on the ground that the ALJ incorrectly determined, in
13 | light of the evidence in the record, that (1) plaintiff is literate; and (2) plaintiff can perform work
14 | that requires recognition of 2,500 words. ECF No. 15 at 11.  The Commissioner counters,
15 | arguing that the ALJ's decision that plaintiff has a marginal education is supported by substantial
16 | evidence. ECF No. 18 at 3.

17 | The Commissioner considers education as a vocational factor. 20 C.F.R. §§ 404.1564,
18 | 416.964. The categories of education that are considered include literacy and the ability to
19 | communicate in English. Id. §§ 404.1564(b)(1), (b)(5); 416.964(b)(1), (b)(5). Literacy is a
20 | vocational factor relevant to the step five inquiry. Silveira v. Apfel, 204 F.3d 1257, 1261–62 n.14
21 | (9th Cir. 2000). The regulations define illiteracy as "the inability to read or write." Id. §
22 | 404.1564(b)(1). "We consider someone illiterate if the person cannot read or write a simple
23 | message such as instructions or inventory lists even though the person can sign his or her name."
24 | Id. The Social Security Act uses several categories to evaluate a person's educational level.
25 | "Generally, an illiterate person has had little or no formal schooling." Id. On the other hand, a
26 | "[m]arginal education means ability in reasoning, arithmetic, and language skills which are
27 | needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th
28 | grade level or less is a marginal education." Id. § 404.1564(b)(2). "Limited education means

ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." Id. § 404.1564(b)(3). A numerical grade level may not represent a person's actual educational ability, however the numerical grade level is used "if there is no other evidence to contradict it." Id. § 416.964(b).

The Medical-Vocational Guidelines, or "grids," are rules that direct findings of "disabled" or "not disabled." See Heckler v. Campbell, 461 U.S. 458, 467–68 (1983) (use of the grids is consistent with the Social Security Act). The grids are based on vocational factors, such as age, education and work experience, as well as the plaintiff's RFC determination. 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(a). If a plaintiff "suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006). "[W]here application of the grids directs a finding of disability, that finding must be accepted by the Secretary." Cooper v. Sullivan, 880 F.2d 1152, 1157 (9th Cir. 1989). Medical-Vocational Rule 202.09 directs a finding of disabled when a person is closely approaching advanced age, "has a skilled or semi-skilled work history with no transferable skills or an unskilled work history," and is illiterate or unable to communicate in English. Silveira, 204 F.3d at 1261 n.11; 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Table 2.

Here, plaintiff was fifty-two years old at the time of the ALJ decision and therefore falls into the "closely approaching advanced age" category. 20 C.F.R. § 404.1563(d) (persons between the ages of 50–54 are considered approaching advanced age); Lockwood v. Comm'r of Social Sec. Admin., 616 F.3dd 1068, 1072 (9th Cir. 2010) (the plaintiff's age at the date of the ALJ decision is the age applied for the Medical-Vocational age categories). The ALJ found that plaintiff's past relevant work is unskilled. AR 17. Therefore, the issue of plaintiff's literacy is critical to the application of the grids, which directs a finding of disabled when a person is closely approaching advanced age, has previous unskilled work experience and is illiterate or unable to communicate in English. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Table 2. It is the ALJ's burden to determine if plaintiff is literate. Silveira, 204 F.3d at 1261–62.

1    While the Commissioner argues that the ALJ correctly found that plaintiff has a marginal
2    education, ECF No. 18 at 3, this argument is unpersuasive.  First, the ALJ found that plaintiff has
3    a limited education, which is different from a marginal education.  AR 17.  As explained, a
4    "limited education" is generally found when a person has completed formal education ranging
5    between the seventh through the eleventh grade, 20 C.F.R. § 416.964(b)(3), whereas a "marginal
6    education" is generally found when a person has completed formal schooling at a sixth grade
7    level or less, id. at § 416.964(b)(2).  The ALJ based its finding that plaintiff has a limited
8    education, in part, on the fact that plaintiff "was in special education up through the 11th grade."
9    AR 17.  However, a numerical grade level is only used to determine educational abilities if there
10   is no other evidence to contradict it.  20 C.F.R. § 416.964(b).  The record contains evidence
11   contradicting a finding that plaintiff has a limited education based on his completion of the
12   eleventh grade.  For example, the WRAT-4 test administered by Dr. Stiles indicates plaintiff's
13   reading and spelling levels are at the 1.7 and K.6 grade levels, respectively.  AR 411.  Thus,
14   because the record contains contradictory evidence, the fact that plaintiff completed the eleventh
15   grade alone cannot be relied upon to conclude plaintiff is not illiterate.  20 C.F.R. § 416.964(b);
16   See, e.g., Diehl v. Barnhart, 357 F. Supp. 2d 804, 824 (E.D. Pa. 2005).

17   With regard to the ALJ's finding that plaintiff has a limited education because he can
18   "read the balance on his food stamp card, read numbers, and sign his name," these abilities do not
19   support a finding that a person has a limited education.  This is because the regulations indicate
20   illiteracy means the inability to read or write "even though the person can sign his or her name."
21   20 C.F.R. § 404.1564(b)(1).  Further, the ability to read numbers alone does not lead to a finding
22   of literacy.  See, e.g., Silveira, 204 F.3d at 1262 n.15 (Rejecting the Commissioner's argument
23   that the plaintiff "has a driver's license and that he shops, pays bills, and handles his bank account
24   without assistance," noting that these transactions "can be conducted orally . . . ."); see also 20
25   C.F.R. § 404.1564(b)(1) (defining illiteracy as the inability to read or write, irrespective of a
26   person's mathematical abilities); Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987) ("This
27   definition makes explicit that literacy turns upon the ability to write as well as to read.").

28   Finally, the ALJ's reliance on the WRAT-4 results does not support a finding that plaintiff

8

has a limited education. While the test results indicate that plaintiff can read and spell words at a grade level of 1.7 and K.6, respectively, the psychologist who administered the test did not offer an opinion regarding plaintiff's ability to "read or write a simple message such as instructions or inventory lists." 20 C.F.R. § 416.964(b)(1). There is minimal case authority that directly addresses whether a particular WRAT score results in a finding that a claimant is literate, and the Ninth Circuit has not squarely addressed this issue. The court finds that the Diehl case addresses similar circumstances and is informative. In Diehl, the plaintiff had completed the twelfth grade and had a WRAT – Third Edition score indicating his reading and spelling were at the third and second grade levels, respectively. Diehl, 357 F. Supp. 2d at 813. The plaintiff testified during the administrative hearing that he was placed in special education classes and that he had difficulty with reading, writing, spelling and comprehension. Id. The ALJ found that the plaintiff was literate and had a high school education or the equivalent. Id. at 823. The court concluded the record did not support the ALJ's finding, reasoning in part as follows:

> Here, the record is lacking in evidence to support a finding one way or the other as to Plaintiff's literacy. Dr. McCusker, a psychologist, examined Plaintiff's cognitive abilities in December 2002 and upon administration of the WRAT determined that Plaintiff read at a third grade level and spelled at second grade level. . . . A handful of courts have held that remand on the issue of literacy is appropriate where a claimant tests below a third grade level so that additional evidence can be gathered. See, e.g. Wolfe v. Chater, 86 F.3d 1072, 1075, 1077 (11th Cir. 1996); Stevens v. Barnhart, No. 02–CV–7150, 2003 WL 22016922, at *8 (E.D. Pa. June 27, 2003); Cole v. Apfel, No. 98–C–6735, 2000 WL 290432, at *4–5 (N.D. Ill. March 17, 2000); see also Skinner v. Sec'y of Health & Human Servs., 902 F.2d 447, 450–51 (6th Cir. 1990) (finding a claimant to be illiterate, in part due to the claimant's testing below a third grade reading level on the WRAT). In addition to Plaintiff's scores on the WRAT, administration of the Wechsler Adult Intelligence Scale yielded a verbal IQ score for Plaintiff of 69. . . . Dr. McCusker was led to conclude that Plaintiff functions within the lowest limits of the Borderline range of intelligence. Id. . . .
>
> . . . .
>
> . . . As the record in this case contains contradictory evidence, the fact that Plaintiff completed the twelfth grade alone cannot be relied upon to conclude that Plaintiff is not illiterate. Therefore, the Court is left to conclude that the evidence of record is insufficient in this case to support a finding that the Plaintiff is literate in light of Plaintiff's scores on the WRAT and the Wechsler Adult Intelligence Scale, Plaintiff's testimony concerning his difficulties

> reading, writing, spelling, and comprehending, and Plaintiff's educational history, namely the fact that he failed the first and sixth grades and was enrolled in special education classes. This does not mean, of course, that there is substantial evidence to support a classification of Plaintiff as illiterate. Rather it means that on remand the ALJ should have Plaintiff's reading ability tested. See [Stevens v. Barnhart, No. 02–CV–7150, 2003 WL 22016922, at *8 (E.D. Pa. June 27, 2003)]. Ascertaining reading ability may simply involve asking Plaintiff "to read aloud a short news article, or asking him to write a note." [Cole v. Apfel, No. 98 C 6735, 2000 WL 290432, at *4 (N.D. Ill. Mar. 17, 2000)].

Id. at 823–24. Other courts have reached similar conclusions. See, e.g., Dixon, 811 F.2d at 510 (Finding that the ALJ's determination that the plaintiff had a marginal education was not supported by the record where the plaintiff testified that he completed approximately six years of formal schooling and could not read or write very well, and concluding that "there is simply no indication that [the plaintiff] could 'write a simple message such as instructions or inventory lists,' as required by the Secretary's own regulations for a finding of literacy." (quoting 20 C.F.R. § 404.1564(b)(1))); Truesdale v. Colvin, No. CIV–12–1307–HE, 2014 WL 549377, at *3 (W.D. Okla. Feb. 11, 2014) (holding that substantial evidence did not support a finding that the plaintiff's first grade education was marginal or that he could write a simple message such as instructions or inventory lists where the plaintiff's WRAT-3 score indicated a grade level equivalent of first grade and plaintiff testified consistently that he can read and write only very little besides his own name (citing Dixon, 811 F.2d at 510)); Franco v. Astrue, No. EDCV 11–1473 SS, 2012 WL 3638609, at *13 (C.D. Cal. Aug. 23, 2012) (finding that there was no clear proof supporting the ALJ's finding that the plaintiff could communicate in English where the plaintiff testified that she could speak English but could only read and write in Spanish); Rodriguez v. Astrue, No. EDCV 12–0673 RNB, 2013 WL 458176, at *2 (C.D. Cal. Feb. 5, 2013) (same).

As in Diehl, the court finds that the record does not support a finding one way or the other with regard to plaintiff's literacy. Plaintiff consistently testified that he could not read or write, he required assistance to fill out the required forms for his application and his reading and spelling comprehension is between a kindergarten and a first grade level. There is nothing in the record, however, that demonstrates plaintiff can read or write a simple message such as

1  instructions or inventory lists as required by the applicable regulations.  20 C.F.R.

2  § 416.964(b)(1).  The court will therefore remand and direct the ALJ to have plaintiff's reading

3  ability tested further, which may include asking plaintiff to read or write a simple message.

4  Diehl, 357 F. Supp. 2d at 824.

5       For these reasons, the court finds that the ALJ has failed to provide specific, legitimate

6  reasons supported by substantial evidence for finding plaintiff has a limited education.  In light of

7  this error, the court declines to reach plaintiff's remaining argument that the ALJ's finding that

8  plaintiff can perform work that requires recognition of 2,500 words is not supported by

9  substantial evidence.  Because the ALJ's disability determination is not supported by substantial

10  evidence, it is erroneous.

11  C.	Remand

12       Plaintiff requests that the court issue an order finding plaintiff is illiterate and directing

13  payment consistent with the application.  ECF No. 15 at 18.  Plaintiff's request is denied.  The

14  decision whether to remand for further proceedings turns upon the likely utility of such

15  proceedings.  Barman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  As explained, the court

16  concludes that outstanding issues remain that must be resolved before a determination of

17  disability can be made.  Pursuant to this remand, the ALJ shall properly consider plaintiff's

18  reading and writing abilities, and re-evaluate plaintiff's literacy accordingly.  Because remand is

19  appropriate on these grounds, the court declines to consider plaintiff's remaining argument.

20       Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

21       1.	Plaintiff's motion for summary judgment, ECF No. 15, is granted in part;

22       2.	The Commissioner's cross-motion for summary judgment, ECF No. 18, is denied;

23  and

24       3.	This matter is remanded for further proceedings consistent with this order.

25  DATED: November 24, 2014

26                        /s/ Allison Claire

27                        ALLISON CLAIRE
                      UNITED STATES MAGISTRATE JUDGE

28